UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TOD C. TURNER,

              Plaintiff,

v.

UNITED STATES,

              Defendant.

No. C04-2080Z

ORDER

This case comes before the Court on the United States' Motion for Summary Judgment Against Plaintiff Tod C. Turner, docket no. 22. Having considered the briefs in support of and in opposition to the motion, and the oral argument of counsel on December 1, 2005, the Court now GRANTS the motion and enters the following Order.

## BACKGROUND

Norfox Software Inc. ("Norfox") withheld federal taxes from its employees' paychecks but did not pay them over to the IRS during the last two quarters of 2000 and the first quarter of 2001. Exs. CC-1, CC-2 and CC-3.[1]

---

[1] Defendant United States submits an "Exhibit List" in lieu of its previously filed Latterell Declaration, docket no. 22, and attaches Exhibits AA ("Costello Dep."), BB ("Turner Dep."), CC-1 to CC-3 (Assessments against Norfox), DD-1 to DD-3 (Assessments against Mr. Turner), and A through Q (Exhibits introduced at Costello and Turner Depositions). See Orr v. Bank of America, 285 F.3d 764, 777-78 n.24 (9th Cir. 2002) (discussing use of Exhibit List to introduce evidence on summary judgment motions).

ORDER 1–

On or about November 17, 2003, the Internal Revenue Service ("IRS") assessed trust fund recovery penalties against Plaintiff Tod C. Turner relating to Norfox's outstanding payroll tax liabilities.  Exs. DD-1, DD-2 and DD-3.  The IRS assessed penalties against Mr. Turner in the amounts of $20,220.64 for the third quarter of 2000, $108,171.19 for the fourth quarter of 2000, and $121,423.78 for the first quarter of 2001.  Id.  As of October 14, 2005, interest brings the total of $249,815.61 assessed against Mr. Turner to $273,870.68.  Simpson Decl., docket no. 22, Ex. 2 ¶ 8.

During these three quarters, Mr. Turner was the Chairperson of the Board of Directors of Norfox and the largest shareholder, with a fifty percent ownership of the stock.  Turner Dep. 23:9-24, 26:24-27:1, 40:18-24; Turner Decl., docket no. 26, ¶ 6.  During the first quarter of 2001, Mr. Turner held the additional title of Chief Executive Officer ("CEO").  Costello Dep. 23:4-6, 23:12-16; Turner Dep. 37:17-18; Ex. C.[2]  The CEO position had become vacant upon the previous CEO Rainer Frost's resignation from Norfox on September 7, 2000.  Turner Dep. 35:25-36:1, 62:12-18, Ex. G-10.  Mr. Turner asserts that he carried the title of CEO to have credibility with potential buyers of Norfox, but that he was not involved in the day-to-day operations of the company.  Turner Dep. 38:6-8, 38:13-15.

During the third quarter of 2000, there were five members of the Board of Directors: Mr. Turner, Carol Rake, Bernie Baird, Rainer Frost and Bob Gregg.  Id. at 34:11-13.  During the fourth quarter of 2000 and the first quarter of 2001, there were three members of the Board of Directors: Mr. Turner, Ms. Rake and Mr. Baird.  Id. at 37:14-16.  Mr. Turner never held a majority of votes on Norfox's Board of Directors.  Turner Decl. ¶ 6.

During the third and fourth quarters of 2000, Ms. Rake served as Secretary-Treasurer of Norfox.  Costello Dep. 27:23-28:1; Turner Dep. 46:20-22; Ex. G-10.  In January 2001,

---

[2] Exhibit C is an email from Mr. Turner dated May 3, 2001, which states "I am CEO . . . "  Mr. Turner authenticated this email during his deposition, and the Court deems it admissible.  Turner Dep. 33:2-25.

ORDER  2–

she officially became the Chief Financial Officer ("CFO"), which was a newly created position within the company. Turner Dep. 34:18-20. Between October 2000 and January 2001, Mr. Baird officially became the President of Norfox, having filled a vacancy by Mr. Gregg's resignation. Id. at 34:17-18, 35:25-36:1, 37:19-25, 48:11.

Mr. Turner's complaint seeks a refund of $750 of the penalty assessed against him that he has paid to the IRS and an abatement of the unpaid portion of the assessed penalties. Compl., docket no. 1, at 3-4. The United States' counterclaim against Mr. Turner seeks a judgment in the amount of $249,815.61, plus interest, fees and costs. Answer and Counterclaims, docket no. 8, at 3-4. The United States now moves for summary judgment on its counterclaim against Mr. Turner, which, if granted, would require the dismissal of Mr. Turner's Complaint. U.S. Mot. Summ. J., docket no. 22. Mr. Turner concedes liability for the quarterly period ending September 30, 2000 (i.e., the third quarter of 2000). He opposes the United States' motion as to the fourth quarter of 2000 and the first quarter of 2001 (the "periods in question"), arguing that genuine issues of material fact preclude summary judgment. Pl.'s Opp'n, docket no. 25.

# DISCUSSION
## I. Evidentiary Objections

Only admissible evidence may be considered in connection with a motion for summary judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). Although Mr. Turner has no objection to the admission of the Costello and Turner depositions, he objects to many of the Exhibits that the United States introduced during the depositions and relied upon in its motion for summary judgment on the grounds of authentication, hearsay and irrelevance. Pl.'s Opp'n at 9-10 (objecting to A-E, F-1 to F-10, G-1 to G-4, G-21 to G-27, H-1 to H-2, I, J-1 to J-7, K-1 to K-19 and L). Contrary to the United States' position, exhibits marked at a deposition do not automatically come into

ORDER  3–

evidence. This Order addresses Mr. Turner's evidentiary objections to the deposition exhibits in footnotes at the point in the Order when the Court relies upon them.

Mr. Turner also objects to Exhibits CC and DD, which are IRS Forms 4340 that show the IRS' assessments against Norfox and Mr. Turner, for lack of authentication. Pl.'s Opp'n at 12. Rule 902(1) of the Federal Rules of Evidence provides for the self-authentication of "Domestic Public Documents Under Seal" for "a document bearing a seal purporting to be that of the United States . . . or of a political subdivision, department, officer or agency thereof, and a signature purporting to be an attestation or execution." Fed. R. Evid. 902(1). Mr. Turner argues that Rule 902(1) does not apply because the exhibits lack the official seal. The United States responds that the documents were imprinted with the official seal but that the seal has only texture, no color, and therefore does not show up on the photocopies used for e-filing. U.S. Reply, docket no. 27, at 4:24-25. The United States offered to supply the originals to chambers if Mr. Turner maintained his objection, which he did not at oral argument. The "Certificate of Official Record" attached to each of the exhibits carries the signature of certifying officer Linda Drake and a statement that she has affixed the seal of the Internal Revenue Service/Department of the Treasury. These certificates are sufficient proof that the assessments were actually made. See Hughes v. United States, 953 F.2d 531, 535 (9th Cir. 1992) (finding such certificates to be sufficient evidence of assessments). Accordingly, Exhibits CC-1, CC-2, CC-3, DD-1, DD-2 and DD-3 are deemed admissible.

## II.     **Summary Judgment**

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

ORDER   4–

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party must present significant probative evidence tending to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. Trust Fund Recovery Penalties Under 26 U.S.C. § 6672

The Internal Revenue Code requires employers such as Norfox to withhold federal social security and income taxes from the wages of their employees. See 26 U.S.C. §§ 3102(a), 3402(a). Although an employer collects this money each salary period, payment to the federal government takes place on a quarterly basis. In the interim, the employer holds the collected taxes in "a special fund in trust for the United States." 26 U.S.C. § 7501(a). These taxes are known as "trust fund taxes." See Slodov v. United States, 436 U.S. 238, 243 (1978).

If an employer fails to pay over collected trust fund taxes, "the officers or employees of the employer responsible for effectuating the collection and payment of trust fund taxes who willfully fail to do so are made personally liable to a 'penalty' equal to the amount of the delinquent taxes" under 26 U.S.C. § 6672 ("Section 6672"). Slodov, 436 U.S. at 244-45. Section 6672 provides, in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax . . . shall . . . be liable to a penalty equal to the total amount of the tax . . . not collected, or not accounted for and paid over.

ORDER  5–

26 U.S.C. § 6672. For the purposes of Section 6672, a "person" includes "an officer or employee of a corporation . . . who . . . is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). In short, an individual is liable for a penalty under Section 6672 if he is a "responsible person"[3] and if he acts willfully in failing to collect or pay over the withheld taxes. Davis v. United States, 961 F.2d 867, 869-70 (9th Cir. 1992) (citation omitted).

### A.     Responsible Person

"Responsibility is a matter of status, duty and authority, not knowledge." United States v. Jones, 33 F.3d 1137, 1139 (9th Cir. 1994); Purcell v. United States, 1 F.3d 932, 937 (9th Cir. 1993); Davis, 961 F.2d at 873. "Authority turns on the scope and nature of an individual's power to determine how the corporation conducts its financial affairs; the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so." Purcell, 1 F.3d at 937.

The Ninth Circuit "has consistently held that the 'persons' who are 'responsible' for the payment of withholding taxes are those who 'had the final word as to what bills should or should not be paid, and when.'" Purcell, 1 F.3d at 936 (quoting Wilson v. United States, 250 F.2d 312, 316 (9th Cir. 1958)). "The final word does not mean 'final' but instead 'the authority required to exercise significant control over the corporation's financial affairs, regardless of whether [the individual] exercised such control in fact.'" Jones, 33 F.3d at 1139 (quoting Purcell, 1 F.3d at 937); see also Alsheskie v. United States, 31 F.3d 837, 838 (9th Cir. 1994). "That an individual's day-to-day function in a given enterprise is unconnected to financial decision making or tax matters is irrelevant where that individual has the authority to pay or to order the payment of delinquent taxes." Purcell, 1 F.3d at 937.

---

[3] The U.S. Supreme Court has noted that "[t]he cases which have been decided under § 6672 generally refer to the 'person required to collect, truthfully account for, and pay over any tax imposed by this title' by the shorthand phrase 'responsible person.'" Slodov, 436 U.S. at 246 n.7.

ORDER  6–

1  Liability may be imposed on more than one person because "'final' means significant, rather
2  than exclusive control." Turner v. United States, 423 F.2d 448, 449 (9th Cir. 1970).

3  Courts consider various factors in determining whether an individual is "responsible,"
4  including "the individual's duties as outlined in the corporate bylaws, his ability to sign
5  checks, his status as an officer or director, and whether he could hire and fire employees."
6  Hochstein v. United States, 900 F.2d 543, 547 (2d Cir. 1990); see Jones, 33 F.3d at 1140
7  (approving use of Hochstein factors). The most critical factor, however, is whether the
8  individual has "significant control over the enterprise's finances." Jones, 33 F.3d at 1140
9  (quoting Hochstein, 900 F.2d at 547). In Hochstein, a controller, who was not an officer or
10 director and who had no authority to hire and fire employees, was nonetheless "responsible"
11 because he had check signing authority and the discretion over which creditors to pay. See
12 Hochstein, 900 F.2d at 547. In contrast, in Jones, a landlord who did not have any signatory
13 powers, who was not an officer or director, who did not have authority to hire and fire
14 employees, and who did not allocate funds among creditors was not "responsible." See 33
15 F.3d at 1140-41. Also in Jones, a consultant who did not have *sole* signatory powers, who
16 was not an officer or director, who had only ambiguous authority to hire, and who did not
17 allocate funds among creditors was not "responsible." See id. at 1141-42. This Order
18 examines the "responsible person" factors in the order discussed by the parties.[4]

### Factor 1: Signatory on the Corporate Checking Account

20 It is undisputed that Mr. Turner was an authorized signatory on the corporation's
21 Bank of America checking account during the periods in question. Turner Decl. ¶ 16 ("I did
22 remain authorized to sign checks on the company's bank account with Bank of America");

---

[4] Neither party argues the Hochstein factor having to do with an individual's duties under the corporate bylaws. On the other hand, both parties discuss a "daily corporate management activity" factor that does not appear in either the Hochstein or Jones cases. As a result, the Court does not discuss these factors.

ORDER  7–

1   Ex. H-1 at 1, 4.[5]  Mr. Turner was removed from this account on May 18, 2001, after the

2   periods in question. Turner Dep. 71:1-4; Ex. H-1 at 3.  In an attempt to minimize the

3   importance of this factor, Mr. Turner relies upon the Jones and Godfrey cases, both of which

4   found the person not to be responsible.  See Jones, 33 F.3d 1137 (9th Cir. 1994); Godfrey v.

5   United States, 748 F.2d 1568 (Fed. Cir. 1984).  These cases are distinguishable from the

6   present case.  In Godfrey, the person "never signed, and was never authorized to sign, the

7   checks" of the company.  748 F.2d at 1571.  In Jones, the person did not have authority to

8   sign checks alone since the checks required two signatures.  33 F.3d at 1141.

9   　　　　Whether Mr. Turner exercised his check-signing authority is irrelevant.  See Jones, 33

10  F.3d at 1139; Purcell, 1 F.3d at 937.  Thus, Mr. Turner's assertion that the only check he

11  signed during the periods in question was a check for $37.15 to a QFC grocery store on

12  October 5, 2000 is irrelevant.  Turner Dep. 72:5-21 (discussing and authenticating QFC

13  check); Ex. I at 4 (QFC check).  Similarly, the fact that he never signed any payroll checks to

14  Norfox employees, even if true, is irrelevant to the question of whether he possessed the

15  authority to sign checks on behalf of Norfox.  Turner Decl. ¶ 21.  Furthermore, Mr. Turner

16  has failed to demonstrate the materiality of the alleged existence of other bank accounts over

17  which he had no signatory authority.  Id. ¶ 19.

18  　　　　Mr. Turner argues that a genuine issue of material fact exists as to whether he had an

19  ability to issue a check to the IRS because the company checkbook was kept in a locked file

20  cabinet in the office of Norfox's bookkeeper, Cathy Costello (formerly Cathy Gruber), and

21  Mr. Turner was unaware of its location.  Costello Dep. 78:7-24; Turner Decl. ¶ 20.  These

22  facts do not raise a *genuine* issue as to Mr. Turner's *authority* to sign checks.  As pointed out

23  by the United States in its reply brief, Mr. Turner's authority would have enabled him to

---

[5] H-1 is a bank signature card showing that Mr. Turner was a signatory as of November 13, 2000. Mr. Turner authenticated Exhibit H-1 during his deposition, and the Court deems it admissible. Turner Dep. 69:25-70:6. During oral argument, Mr. Turner also admitted that he had check signing authority during the periods in question.

ORDER  8–

walk into Bank of America and order more checks or electronically transfer funds. U.S. Reply at 6. As a director and officer, Mr. Turner presumably also had authority to find out from Ms. Costello where the checkbook was located. Because Mr. Turner's authority to sign checks is undisputed, there is no factual question for a jury on this factor.

### Factor 2: Bill Paying Authority

The issue here is whether Mr. Turner had the "authority to pay or to order the payment of delinquent taxes" during the fourth quarter of 2000 and the first quarter of 2001. Jones, 33 F.3d at 1140 (quoting Purcell, 1 F.3d at 937). Although this factor and the first "check-signing authority" factor typically go hand-in-hand, the Court does not assume that just because a person is a signatory on the corporate checking account that he has authority within the company to pay or order the payment of delinquent taxes.[6]

A person's authority within the company to pay out corporate funds is clearly manifested when that person has exercised control over which creditors are paid. Cf. Jones, 33 F.3d at 1141-42. The authority that permits control over a corporation's financial affairs "carries with it a nondelegable duty to ensure that withholding taxes are duly collected and paid over to the government." Purcell, 1 F.3d at 937. In Purcell, the sole authorized signatory on the company's checking account, who also was the company's president and sole shareholder, was held to be liable under Section 6672 even though he had hired a chief financial officer to whom he delegated all financial matters. See 1 F.3d at 935, 937.

---

[6] There is only one case that the Court is aware of in which a person who had signature authority over the company's checking account was found not to have discretionary authority to pay the company's federal employment taxes and thus was not a "responsible person." See Alsheskie v. United States, 31 F.3d 837, 839 (9th Cir. 1994). In Alsheskie, pursuant to a financing agreement between two companies, a parent company controlled all of the financial operations of the company that failed to pay its taxes, leaving the president of the latter company powerless to pay the IRS debt. Id. The existence of the financing agreement was crucial to the court's holding that the president lacked authority to pay the IRS. Id. No similar facts are alleged in the present case.

ORDER  9–

In the present case, it is undisputed that in the second and third quarters of 2000 – at least from May through August 2000 when Mr. Frost was CEO – Mr. Turner "made the majority of the recommendations regarding payments" and would "prioritize creditors via e-mail instructions to" the bookkeeper, Ms. Costello.  Turner Dep. 46:8-14, 49:6-8, 57:20-58:12, 60:2-5; Ex. G-14 (demonstrating authority as late as September 26, 2000).  In other words, Mr. Turner does not deny that he possessed the authority within the company to pay or order the payment of creditors during the second and third quarters of 2000.  The key factual question is what happened to Mr. Turner's authority after Mr. Frost resigned from the CEO position in September 2000.  Mr. Turner asserts that the Board of Directors took away his authority against his will, leaving him powerless to pay Norfox's unpaid taxes.  The United States asserts that Mr. Turner "delegated" his authority over Norfox's financial affairs to Ms. Rake and argues that his duty to pay Norfox's unpaid taxes is nondelegable under Purcell.

In opposition to the United States' motion for summary judgment, Mr. Turner submits a declaration in which he states that "at the beginning of the fourth quarter of 2000" the Norfox Board of Directors voted 2-to-1 to take away his authority over financial affairs of the corporation, and that he voted against the change.  See Turner Decl., docket no. 26, ¶¶ 14-18.[7]  Paragraph 15 states in full:

> At the beginning of the fourth quarter of 2000, my duties and authority at Norfox changed substantially.  After Rainer Frost left Norfox, there were only three members of the Board of Directors: myself, Carol Rake and Bernard Baird.  A Board meeting was held that I attended, along with Carol Rake and Bernard Baird.  During that Board meeting, Ms. Rake insisted that she be given sole control over the financial affairs of the corporation.  A vote was taken, with Carol Rake and Bernard Baird (who were husband and wife by this time) voting in favor and myself voting against.  As a result of that vote, my authority at Norfox was limited to seeking sources of outside funding or, alternatively, a purchaser for Norfox.

---

[7] Mr. Turner does not specify a date of this alleged board meeting.  Nor does he submit into evidence any minutes of the meeting or any other evidence regarding the meeting.

ORDER  10–

Id. ¶ 15. Paragraphs 14 and 16-18 expand on the facts outlined in Paragraph 15. Id. ¶¶ 16-18.

Mr. Turner's declaration statements in Paragraphs 14-18 contradict his prior deposition testimony in three major ways. First, his deposition testimony shows that it was he, rather than Ms. Rake, who took the initiative to transfer authority over financial affairs to Ms. Rake, as early as August 2000. See Turner Dep. 58:21-24 (testifying that on August 1, 2000 he asked Ms. Rake for help with Norfox's financial affairs); Id. 59:5 ("I can pinpoint the date that I asked Carol for help"); see also Ex. G-9 (an email dated August 1, 2000 from Mr. Turner to Ms. Rake asking for her help with payments and telling her that he would instruct the bookkeeper to "start forwarding the financial issues to" Ms. Rake).

Second, Mr. Turner's deposition testimony admits that he continued to exercise authority over Norfox's financial affairs and prioritize creditors for the bookkeeper through "mid-fourth quarter" of 2000 and that he served as a backup for Ms. Rake when she was unavailable until January 2001:

> Q: So what was the procedure for deciding who signed checks at Norfox?
> A: Well, depends upon the time period that you're referencing.
> Q: Let's start with the third quarter 2000 and go through the first quarter of 2001.
> A: Third quarter 2001 [sic], beginning of the quarter, Cathy would call me and I would prioritize for her what to pay. By the end of the third quarter, we've started to transition those responsibilities over to Carol. **By mid-fourth quarter, Cathy is now getting prioritization from Carol and Carol is only – and I am only signing if Carol is not available to sign. And in January of '01 on, I'm not recommending any payments.**

Turner Dep. 72:22-73:9 (emphasis added); see also Turner Dep. 59:5-59:10 (discussing how he and Ms. Rake shared the handling of financial matters during the "transitional process" from August to November 2000). His declaration, in contrast, states that the transition took place during the third, not the fourth, quarter. Turner Decl. ¶ 14.

Third, Mr. Turner was asked during his deposition whether the transition of authority to Ms. Rake was "reflected in a board of directors meeting." Mr. Turner responded, "No.

ORDER  11−

It's reflected in numerous phone conversations that I had with Carol." Turner Dep. 58:25-59:3. At another point in his deposition, he implies that a board meeting was held during which the transfer of authority was voted upon, but his characterization of the vote is completely at odds with his declaration statement. Mr. Turner's deposition testimony states as follows:

> Q: Any power restructuring has to be approved by the board of directors; isn't that correct?
> A: Correct.
> Q: And post Rainer, aren't there only three of you on the board of directors?
> A: That's right. So if Carol and Bernie and I had a joint conversation and agreed to a change, it was approved by the board, because that was the entire board.
> **Q: So isn't it fair to say, then, that you approved Carol taking on the payroll tax problem and the vendor problem?**
> **A: That's correct. As a member of the board I did, as did Bernie.**

Id. at 93:8-19 (emphasis added). Thus, although Mr. Turner's deposition testimony is ambiguous as to whether the Norfox Board of Directors formally voted to transfer authority over financial affairs to Ms. Rake, it is clear that Mr. Turner "approved Carol taking on the payroll tax problem and the vendor problem." See id. His declaration statements that the board voted 2-to-1 to have Ms. Rake take over and that he voted against the change is directly contradictory to his deposition testimony.

"[A] party cannot create an issue of fact by an affidavit contradicting his prior testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). For the three reasons outlined above, Mr. Turner's declaration statements in Paragraphs 14-18 flatly contradict his prior deposition testimony. This contradiction is a "sham" to avoid summary judgment. See id. at 267 (requiring district court to make "sham" determination).

ORDER 12–

Accordingly, the Court does not consider the contradictory portions of Paragraphs 14-18 of Mr. Turner's declaration on summary judgment.[8]

Other than Mr. Turner's declaration statements in Paragraphs 14-18, there is no evidence before the Court that Mr. Turner's authority was taken away from him by a board vote in which he voted against the change. Mr. Turner's deposition testimony, outlined above, shows that he approved of Ms. Rake's assumption of authority over Norfox's financial affairs. Mr. Turner's deposition testimony also shows that Mr. Turner and Ms. Rake shared authority during the fourth quarter, with Mr. Turner at a minimum making prioritization decisions when Ms. Rake was unavailable. During the fourth quarter, the bookkeeper inquired of both Mr. Turner and Ms. Rake as to whether the IRS should be paid from newly available funds. Costello Dep. 43:8-23, Ex. G-17 (email from Ms. Costello to Mr. Turner and Ms. Rake on November 3, 2000, asking them whether certain creditors should be paid from $50,000 in new funds or whether they wanted to "put the majority of the amount on the past due federal payroll taxes."). This email is further evidence that Mr. Turner retained authority over financial matters during the fourth quarter of 2000.

By January 2001, Ms. Rake exercised almost exclusive authority over the decisions about what bills to pay and what not to pay. Turner Dep. 73:6-9; Costello Dep. 14:19-15:21 (bookkeeper testifies that she looked to Ms. Rake for direction on payments in January 2001). The Court says "almost exclusive" because the evidence shows that Mr. Turner continued to exercise some authority over Norfox's financial affairs during the first quarter of 2001, and thereafter. For example, in the first quarter of 2001, Mr. Turner negotiated a new repayment plan for Norfox's $300,000 line of credit with Bank of America. Turner

---

[8] Nor does the Court consider Ms. Costello's testimony that the Norfox Board of Directors voted on Mr. Turner's authority to prioritize creditors because her testimony (i.e., "I have been told . . .") is inadmissible hearsay. Costello Dep. 15:25-16:7.

ORDER  13−

Dep. 78:12-79:3, 81:18-82:4; Costello Dep. 54:15-24; Ex. K-4.[9] During his deposition, he testifies:

> A: . . . [O]n behalf of Norfox, Norfox was in default on a $300,000 line of credit for Bank of America. I went down to Los Angeles and met with the head of special credits for Bank of America and, based on Bernie's sales projections, was able to negotiate a repayment plan on the line of credit, rather than having them call the entire line of credit.

Turner Dep. 78:22-79:3. Someone without authority over the company's financial affairs would not have the authority to negotiate a repayment plan on behalf of the company. As late as August 2001, Mr. Turner exercised his authority to ensure that Mr. Frost was receiving payments pursuant to Mr. Frost's severance package when Ms. Rake was not making the payments to Mr. Frost. Turner Dep. 88:5-90:4, Ex. K-13.[10] Although Mr. Turner's efforts to ensure that Mr. Frost received his money took place after the periods in question, the evidence is relevant because it shows that his authority to influence who got paid from corporate funds existed as late as August 2001. See Purcell, 1 F.3d at 938 (liability under Section 6672 for person who paid out corporate funds to other creditors after the period in question rather than remitting taxes to the government).

### Factor 3: Leadership Titles

Titles are material but not determinative of the central question, which is who had "the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to" fulfilling its obligations to the IRS. Godfrey, 748 F.2d at 1575. Mr. Turner admits that he was a "responsible person" during the

---

[9] Exhibit K-4 is an email dated January 22, 2001 from Mr. Turner regarding his commitment to work with Ms. Rake and Norfox's banker, Lisa Fugit, to address Bank of America's demand for payment on a line of credit. Mr. Turner and Ms. Costello authenticated this email during their respective depositions, and the Court deems it admissible. Turner Dep. 81:18-82:4; Costello Dep. 54:15-24.

[10] Exhibit K-13 is an email from Mr. Turner to Mr. Frost on August 17, 2001. Mr. Turner authenticated it during his deposition, and the Court deems it admissible. Turner Dep. 88:5-20.

ORDER  14–

third quarter of 2000, during which time he was Chairperson of the Board of Directors and the largest shareholder of Norfox stock. It is undisputed that he continued to be Chairperson of the Board of Directors and the largest shareholder during the periods in question.

That Mr. Turner held the additional position of CEO during the first quarter of 2001 is not material because there is no evidence to show that this title carried with it authority over financial affairs of the company. Indeed, Mr. Turner admits that he had significant control over the company's financial affairs while Rainer Frost was CEO.

### Factor 4: Hiring/Firing Authority

It is undisputed that Mr. Turner had authority to hire and fire Norfox employees. Costello Dep. 8:15-16; 11:10-11; Turner Dep. 31:10-19; 42:14-17; G-10 (Mr. Frost's termination letter signed by Mr. Turner). During the periods in question, Mr. Turner specifically handled the personnel matters related to Norfox's programmers, which involved layoffs. Costello Dep. 77:1-24; Pl.'s Opp'n at 21 n.12. The evidence is unclear as to whether Mr. Turner had the authority to unilaterally make hiring and firing decisions, but it is clear that he could influence the decisions as a member of the Board of Directors.

### Analysis

Mr. Turner has failed to raise a genuine issue of material fact for the jury on any of these factors, all of which favor the United States. Mr. Turner admits that he had authority and control over Norfox's financial affairs during the third quarter of 2000. The only change that occurred after the third quarter and during the periods in question is that Mr. Turner transferred primary authority over financial affairs to Ms. Rake. This transition of power was something that he approved of, either informally through e-mails, phone calls and other conversations with Ms. Rake or as a member of the board. By approving of Ms. Rake's assumption of control over Norfox's financial affairs, he delegated this power to her. As a matter of law, he could not delegate the duty to pay Norfox's taxes to Ms. Rake. See Purcell, 1 F.3d at 937. Furthermore and in the alternative, Mr. Turner retained authority over

ORDER  15−

Norfox's financial affairs during the periods in question, a conclusion that is supported by the facts that he prioritized payments in the fourth quarter of 2000, he negotiated a repayment plan with Bank of America on behalf of Norfox in the first quarter of 2001, and he ensured that Mr. Frost received monies owed to him in August 2001. In light of the undisputed facts, the Court holds as a matter of law that Mr. Turner was a "responsible person" under Section 6672 during the fourth quarter of 2000 and the first quarter of 2001.

**B.     Willfulness**

The Ninth Circuit defines "willfulness" "as a voluntary, conscious, and intentional act to prefer other creditors over the United States." Purcell, 1 F.3d at 938 (quoting Davis, 961 F.2d at 871); see also Teel v. United States, 529 F.2d 903, 905 (9th Cir. 1976). "An intent to defraud the government or other bad motive need not be proven." Davis, 961 F.2d at 871; Klotz v. United States, 602 F.2d 920, 923 (9th Cir. 1979). "The question of willfulness is a factual one and if sufficiently controverted, would preclude the granting of a summary judgment on penalty liability." Teel, 529 F.2d at 905. In Teel, summary judgment in favor of the United States was affirmed on appeal because it was uncontroverted that the responsible persons knew of the nonpayment of taxes and they knew that the company was spending money on new purchases rather than on the unpaid taxes. See id. at 905-06. In Davis, the Ninth Circuit affirmed a jury verdict in favor of the United States, finding that Mr. Davis's deliberate decision to use corporate revenues to pay commercial creditors rather than diminish the company's tax debt fell within the literal terms of the definition of willfulness. 961 F.2d at 871. In Purcell, the Ninth Circuit affirmed the district court's granting of a directed verdict in favor of the United States; in that case, the president of the company was found to have willfully preferred other creditors over the United States even though the president had met with an IRS agent who encouraged him to keep the business going. See 1 F.3d at 937-40.

ORDER  16–

It is undisputed that Mr. Turner had knowledge of Norfox's unpaid taxes. Turner Dep. 51:16-17 (knowledge of unpaid taxes in July 2000); 57:11-13 (same); 92:12-16 (knowledge of unpaid taxes admitted "[a]fter Rainer left in the fall of 2000"); Ex. G-17 (November 13, 2000 email notifying Mr. Turner of "past due federal payroll taxes"); G-27 (January 8, 2001 IRS notice of intent to levy on assets because of unpaid taxes, addressed to Norfox Software Inc., c/o Tod C. Turner);[11] see also Turner Dep. 65:9-18; 93:5-7 (Mr. Turner's knowledge that Ms. Rake was meeting with the IRS).

At oral argument, Mr. Turner admitted that he knew of Norfox's unpaid taxes, but argued that willfulness requires more than knowledge. Mr. Turner argues that the willfulness requirement is unmet because the only check that he signed during the periods in question was the check for $37.15 to QFC on October 5, 2000. See Ex. I at 4. The Court notes that in addition to this check, Mr. Turner admits that he recommended payments during the fourth quarter of 2000. Turner Dep. 72:22-73:9. Although there is no evidence as to how much money[12] or where the money was spent, the IRS was clearly not paid off. As previously discussed, Mr. Turner also prioritized payments to Bank of America, see Turner Dep. 78:12-79:3, 81:18-82:4, Costello Dep. 54:15-24 and Ex. K-4, and to Mr. Frost, see Turner Dep. 88:5-90:4 and Ex. K-13, over the United States.

Mr. Turner admitted at oral argument that he made no efforts to urge the other members of the Board and particularly Ms. Rake to use available funds to pay the IRS rather than to meet payroll or other needs. Because of the nondelegable duty to pay the IRS, Mr. Turner must be held liable for Ms. Rake's willfulness as well as his own. Thus, for example, his failure to follow up on the November 3, 2000 email from Ms. Costello to Mr. Turner and

---

[11] Mr. Turner authenticated this exhibit during his deposition and the Court deems it admissible. See Turner Dep. 67:7-68:1.

[12] There is no requirement that the funds directed to other parties be of sufficient amount to cover the unpaid taxes.

ORDER  17–

Ms. Rake regarding the $50,000 in available funds contributes to his willfulness. During his deposition, he testifies that he does not recall what action was taken in response to Ms. Costello's email: "I'm sure that the $50,000 got spent. I don't know whether it got spent on payroll taxes or other bills or something else." Turner Dep. 63:11-64:7. During the periods in question, Mr. Turner failed to fulfill his nondelegable duty to see that these and any other available funds were remitted to the IRS and not to other creditors.

Accordingly, the Court holds as a matter of law that Mr. Turner's failure to pay over the payroll taxes was willful under Section 6672 during the fourth quarter of 2000 and the first quarter of 2001.

## CONCLUSION

The Court GRANTS the United States' Motion for Summary Judgment Against Plaintiff Tod C. Turner, docket no. 22.

Pursuant to the United States' proposed order, the Court ORDERS that each side bear its own costs.

The Court directs the Clerk to enter a judgment in favor of the United States and against Mr. Tod C. Turner on the United States' counterclaim. Mr. Turner is liable for the balance of the assessment, plus statutory interest.

The Court DISMISSES Mr. Turner's Complaint with prejudice.

IT IS SO ORDERED.

DATED this 30th day of December 2005.

Thomas S. Zilly
United States District Judge

ORDER  18–